UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

| | |
|---|---|
| **James Sapiega**, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> **C.R. England, Inc.**. <br><br> Defendant. | No. _____ <br><br> **COLLECTIVE ACTION COMPLAINT** |

Plaintiff, James Sapiega ("Plaintiff"), individually and on behalf of all other persons similarly situated, sues the Defendant, C.R. England, Inc. ("C.R. England" or "Defendant") and alleges as follows:

**PRELIMINARY STATEMENT**

1. This lawsuit arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq.*, Illinois Wage Payment and Collection Act ("IWPCA"), 820 115/1 *et seq.* and Fed. R. Civ. P. 23 for Defendant's failure to pay Plaintiff and other similarly-situated employees all earned minimum and overtime wages.

2. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) on behalf of himself and all similarly-situated current and former Driver Trainees[1] (also referred to as the "Covered Positions") of C.R. England at any point within three years prior to filing of this Complaint to the

---

[1] For the purposes of this Complaint, "Driver Trainees" is exclusively a job title used for the purpose of classifying the putative collective of similarly situated individuals, is not necessarily the job title of Plaintiff and the putative collective, and has no bearing or relation to any specialization, skill, educating, training, or other qualification that might otherwise be associated with such a job title.

present and who were residents of Illinois. Such similarly-situated individuals are referred to herein as "Collective Members."

3. Plaintiff further brings this action as a class action pursuant Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq* and Fed. R. Civ. P. 23 on behalf of himself and all current and former Driver Trainees of C.R. England at any point within three years prior to the filing of this Complaint to the present who were residents of Illinois.

4. Plaintiff further brings this action as a class action pursuant to the Illinois Wage Payment and Collection Act ("IWPCA"), 820 115/1, *et seq* and Fed. R. Civ. P. 23 on behalf of himself and all current and former Driver Trainees of C.R. England at any point within ten years prior to filing of this Complaint to the present and who were residents of Illinois.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq.* because this civil action arises under the laws of the United States.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

7. C.R. England is duly licensed to transact business in Illinois and regularly conducts business in and has engaged in the wrongful conduct alleged herein – and, thus, is subject to personal jurisdiction in – this judicial district.

8. Plaintiff and the Collective Members in their work for C.R. England were employed by an enterprise engaged in commerce that had annual gross sales of at least $500,000.

## FACTUAL ALLEGATIONS

9. At all times material to the matters alleged in this Complaint, Plaintiff James Sapiega was an individual residing in Lake County, Illinois, and is a former employee of Defendant's.

10. C.R. England is one of the largest transporters of refrigerated goods in the nation. *See* https://www.crengland.com/ (last visited Oct. 27, 2022).

11. As part of its nationwide shipping network, C.R. England owns and operates regional warehouses and terminals throughout the country, including one such facility located in Joliet, Illinois.

12. In an effort to meet its consistent demand for drivers, C.R. England recruits individuals that do not yet have possess their Commercial Driver's License ("CDL") and offers to hire, train and pay them. *See* https://drivecre.com/ (last visited Oct. 27, 2022).

13. C.R. England places these Driver Trainees, including Plaintiff, the Collective Members and the Class Members in C.R. England's extensive training program which is designed to take approximately nine (9) months to complete.

14. At all relevant times, C.R. England exercises control over the training program that they place their Driver Trainees in and Plaitniff, the Collective Members and the Class Members spend their time adhering to C.R. England's training requirements and are under C.R. England's control.

15. C.R. England's Driver Trainees, including Plaintiff, the Collective Members and the Class Members begin their training with C.R. England with an intensive onsite classroom-based program which lasts approximately three (3) weeks.

16. C.R. England does not compensate its Driver Trainees, including Plaintiff, the Collective Members and the Class Members whatsoever for their time spent in this initial training period.

17. Plaintiff, the Collective Members and the Class Members spend approximately 72-hours per week in their work for C.R. England during this time.

18. C.R. England then transitions its Driver Trainees, including Plaintiff, the Collective Members and the Class Members to road-based training where the Driver Trainees spend time in a C.R. England truck under the supervision of a C.R. England Driver Mentor.

19. During the road-based training, Plaintiff performed work for C.R. England within Illinois, including but not limited to, work performed at C.R. England's Joliet, Illinois facility.

20. During this supervised road-based training, C.R. England pays its Driver Trainees, including Plaintiff, the Collective Members and the Class Members a flat rate of $80.00 per day.

21. However, during this phase of training, the Driver Trainees, including Plaintiff, the Collective Members and the Class Members are working no less than 12-hours per day, 7-days per week. As such, during this phase of training C.R. England still does not meet its minimum wage or overtime requirements to Plaintiff, the Collective Members or the Class Members.

22. After the Driver Trainees satisfy certain C.R. England requirements and criteria, C.R. England transitions its Driver Trainees, including Plaintiff, the Collective Members and the Class Members to miles-based compensation system wherein C.R. England pays the Driver Trainees approximately 14-cents per mile driven.

23. However, C.R. England also begins to deduct the cost of training from the Driver Trainees' pay at this time.

24. C.R. England determines the price of the training that it requires to be deducted from the Driver Trainee's pay and represents to Plaintiff, the Collective Members and the Class Members that part of that price includes the lodging provided to Plaintiff, the Collective Member and the Class Members during the initial on-site phase of the training program.

25. All Driver Trainees have a least 30% of the cost of training deducted from their pay.

26. Driver Trainees who remain employed with C.R. England for at least one year are elgible to have up to 70% of the cost of training "forgiven."

27. If a Driver Trainee fails to remain employed with C.R. England for at least one year, for whatever reason, C.R. England seeks repayment of the remaining balance of the entire training amount.

28. At all relevant times, C.R. England had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiff's and the Collective Members' employment. C.R. England determined the pay policies described herein and the corresponding reduction in labor costs and increase in profits was enjoyed by C.R. England. As such, C.R. England is Plaintiff's, Collective Members' "employer" under the FLSA, IMWL and IWPCA.

29. At all material times, Plaintiff, the Collective Members and the Class Members were employees of C.R. England as defined by the FLSA, IMWL and IWPCA.

30. Plaintiff has given his written consent to be named party Plaintiff in this action pursuant to 29 U.S.C. § 216(b), a true and accurate copy of which is attached to this Complaint as "**Exhibit A**."

## **COLLECTIVE ACTION ALLEGATIONS**

31. Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

32. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) on his own behalf and as a representative of individuals similarly situated who are current or former Driver Trainees employed by C.R. England.

33. C.R. England subjected all of their Driver Trainees, including Plaintiff and the Collective Members, to their policy of failing to pay any wages for training, paying flat daily rates and charging back training costs as described herein and therefore failing to pay Plaintiff and the Collective Members all minimum wages and overtime wages required by 29 U.S.C. §§ 206(a) and 207(a).

34. At all times material, Plaintiff and the Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to C.R. England's decision, policy, plan, and common programs, practices, procedures, protocols, routines, and rules of requiring Plaintiff and the Collective Members to complete required orientation and training tasks while paying them a flat daily rate, and a result, failing to pay Plaintiff and the Collective Members all minimum wages and overtime wages required by 29 U.S.C. §§ 206(a) and 207(a).

35. Plaintiff's claims stated in this Complaint are essentially the same as those of the Collective Members. This action is properly maintained as a collective action because in all pertinent aspects the employment relationship of individuals similarly situated to Plaintiff is identical or substantially similar.

36. The Collective Members perform or have performed the same or similar work as Plaintiff.

37. C.R. England's failure to pay minimum wage and overtime compensation required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of Plaintiff or the Collective Members.

38. Although the exact amount of damages may vary among the Collective Members, the damages for the Collective Members can be easily calculated by a simple formula. The claims of all Collective Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by C.R. England that caused harm to all of the Collective Members.

39. As such, Plaintiff brings his FLSA minimum wage and overtime claims as a collective action on behalf of the following class:

> **All residents of Illinois who participated in C.R. England's Driver training program at any point from three years prior to the filing of this lawsuit to the present.**

40. C.R. England's unlawful conduct, as described herein, is pursuant to their corporate policy or practice of minimizing labor costs by refusing and/or failing to properly compensate its employees according to the FLSA.

41. C.R. England was aware or should have been aware that federal law prohibited them from not paying their Driver Trainees all minimum and overtime wages as required by the FLSA. In fact, C.R. England was subject to a similar. In fact, C.R. England was sued for substantially similar FLSA violations which resulted in C.R. England settling the claims of similarly situated Driver Trainees for $5,000,000. *See Campbell v. C.R. England, Inc.*, Case No. 2:13-cv-00262, 2015 U.S. Dist. LEXIS 134235 (D. Utah, Sept. 30, 2015).

42. C.R. England's unlawful conduct has been widespread, repeated, and consistent.

7

43. This action is properly brought and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b).

44. Upon information and belief, the individuals similarly situated to Plaintiff includes thousands of Driver-Trainees currently and/or formerly employed by C.R. England. Plaintiff is unable to state the precise number of similarly-situated employees because that information is solely in C.R. England's possession, custody, or control, but it can be readily ascertained from their employment records.

45. Notice can be provided to the Collective Members by First Class Mail to the last address known to C.R. England, via email at the last known email address known to C.R. England, and by text message to the last known telephone number known to C.R. England.

## CLASS ACTION ALLEGATIONS

46. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

47. Plaintiff brings Claims for Relief for violations of the IMWL as a class action pursuant to Rule 23(a), (b)(2), and (b)(3). Plaintiff brings these claims on behalf of himself and all members of the following class comprised of:

> **All residents of Illinois who participated in C.R. England's Driver training program at any point from three years prior to the filing of this lawsuit to the present (the IMWL Class).**

48. Plaintiff brings Claims for Relief for violations of the IWPCA as a class action pursuant to Rule 23(a), (b)(2), and (b)(3). Plaintiff brings these claims on behalf of himself and all members of the following class comprised of:

> **All residents of Illinois who participated in C.R. England's Driver training program at any point from ten years prior to the filing of this lawsuit to the present (the IWPCA Class).**

8

49. The Class Members are so numerous that joinder of all members is impracticable. Plaintiff on information and belief alleges, that greater than one thousand people who satisfy the definition of the Class Members.

### a. Existence of Common Questions of Law and Fact (Rule 23(a)(2)).

50. Common questions of law and fact exist as to the Plaintiff and the Class Members including, but not limited to, the following:

   a. Whether C.R. England unlawfully failed to pay the Class Members all minimum wages required by the Illinois Minimum Wage Law;

   b. Whether C.R. England unlawfully failed to pay the Class Members all overtime wages required by the Illinois Minimum Wage Law;

   c. Whether C.R. England made unlawful deductions from the Class Members' wages in violation of the Illinois Wage Payment and Collection Act;

   d. Whether C.R. England unlawfully failed to keep and maintain accurate and true records of the hours worked by the Class Members as required by applicable law; and

   e. The damages sustained and the proper measure of restitution recoverable by the Class Members.

### b. Typicality (Rule 23(a)(3)).

51. Plaintiff's claims are typical of the Class Members' claims. Plaintiff, like other Class Members, was subjected to C.R. England's illegal scheme to maximize profits by depriving their employees of overtime compensation and making unlawful deductions from their pay.

### c. Adequacy (Rule 23(a)(4)).

52.     Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff has retained counsel competent and experienced in complex class actions, the FLSA, and state labor and employment litigation.

### d.  Injunctive and Declaratory Relief (Rule 23(b)(2)).

53.     Class certification of the Rule 23 claims is appropriate pursuant to Rule 23(b)(2) because C.R. England acted or refused to act on grounds generally applicable to the Class Members, making appropriate declaratory relief with respect to the Class as a whole.

### e.  Predominance and Superiority of Class Action (Rule 23(b)(3)).

54.     Class certification of the Rule 23 claims is also appropriate under Rule 23(b)(3) because questions of law and fact common to the Class Members predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. C.R. England's common and uniform policies and practices illegally deprived Plaintiff and all similarly situated employees of wages; thus, making the question of liability and damages much more manageable and efficient to resolve in a class action, compared to hundreds of individual trials. The damages suffered by individual Class Members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Citgo's practices.

55.     Plaintiff intends to send notice to all members of the Class Members to the extent required by Rule 23.

**COUNT ONE: FAIR LABOR STANDARDS ACT**
**FAILURE AND/OR REFUSAL TO PAY MINIMUM WAGE**
**(On behalf of the Collective Members)**

54. Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

55. By failing to pay Plaintiff and the Collective Members any wages whatsoever for approximately the first three weeks of their training program, C.R. England failed to pay Plaintiff and the Collective Members minimum wage as required by 29 U.S.C. § 206.

56. Additionally, as a consequence of electing to pay its Driver Trainees a flat rate of $80 per day during orientation and training, C.R. England cannot require Plaintiff and the Collective Members to work more than eleven hours per day on average of the course of any given workweek without falling below the $7.25 per hour minimum wage mandated by the FLSA ($80.00 per day / $7.25 per hour = 11.03 hours).

57. During the entirety of Plaintiff's and the Collective Members' time working in C.R. England's training program, Plaintiff and the Collective Members worked in excess of 11.03 hours per day on average over the course of any given workweek.

58. During the entirety of Plaintiff's and the Collective Member's time working in C.R. England's orientation and training program, Plaintiff and the Collective Members worked in excess of 12 hours per day over the course of any given workweek.

59. Moreover, the "wage requirements of the [FLSA] will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee." 29 C.F.R. § 531.35.

60. By deducting Plaintiff's and the Collective Members' pay and otherwise requiring Plaintiff and the Collective Members to pay back the cost of training as detailed herein, C.R. England further violated the minimum wage provisions of the FLSA.

61. Although at this stage, Plaintiff and the Collective Members are unable to state the exact amount owed for all time worked during the course of their time spent in C.R. England's orientation and training program, Plaintiff and the Collective Members believe that such information will become available during the course of discovery. Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

62. C.R. England knew that – or acted with reckless disregard as to whether – its refusal or failure to properly compensate Plaintiffs and the Collective Members over the course of their orientation and training program would violate the FLSA, and C.R. England was aware of the FLSA's minimum wage requirements.

63. In fact, C.R. England was sued for substantially similar FLSA violations which resulted in C.R. England settling the claims of similarly situated Driver Trainees for $5,000,000. *See Campbell v. C.R. England, Inc.*, Case No. 2:13-cv-00262, 2015 U.S. Dist. LEXIS 134235 (D. Utah, Sept. 30, 2015).

64. As such, C.R. England's conduct constitutes a willful violation of the FLSA.

65. As a result of C.R. England's failure or refusal to pay Plaintiff and the Collective Members the minimum wage for all hours worked in as detailed herein, C.R. England violated 29 U.S.C. § 206(a). Plaintiff and the Collective Members are therefore entitled to compensation of the minimum wage shortfall to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

### COUNT TWO: FAIR LABOR STANDARDS ACT
### FAILURE AND/OR REFUSAL TO PAY
(On behalf of the Collective Members)

66. Plaintiff and the Collective Members reallege and incorporate by reference all

allegations in all preceding paragraphs.

67. The purpose of C.R. England's immersive training program is to prepare Plaintiff and the Collective Members to become part of C.R. England's fleet of CDL drivers. C.R. England's training program is designed to prevent Plaintiff and the Collective Members from affecting the safety of operation of motor vehicles in transportation on public highways.

68. At the onset of C.R. England's training program, Plaintiff and the Collective Members spend approximately three (3) full weeks at Defendant's dedicated training facilities. During this first three weeks, Plaintiff and the Collective Members are required to complete rigorous coursework, study course materials, prepare for quizzes and tests, and earn passing grades on the same. Plaintiff and the Collective Members do not affect the safety of operation of motor vehicles in transportation on public highways during this time.

66. During the first three weeks of Plaintiff and the Collective Members' orientation and training, they work well in excess of forty (40) hours per week, but C.R. England does not Plaintiff and the Collective Members an overtime rate of at least one-and-one-half times minimum wage their hours spent working in excess of forty (40) hours per week. Instead, C.R. England initially fails to pay Plaintiff and the Collective Members any wages whatsoever and then transitioned Plaintiff and the Collective Members to a sub-minimum flat daily rate of $80.00 per day.

67. Moreover, the "wage requirements of the [FLSA] will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee." 29 C.F.R. § 531.35.

68. By deducting Plaintiff's and the Collective Members' pay and otherwise requiring Plaintiff and the Collective Members to pay back the cost of training as detailed herein, C.R. England further violated the overtime wage provisions of the FLSA.

69. Although at this stage, Plaintiff and the Collective Members are unable to state the exact amount owed for all time worked during the course of their employment, Plaintiff and the Collective Members believe that such information will become available during the course of discovery. Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

70. C.R. England knew that – or acted with reckless disregard as to whether – its refusal or failure to properly compensate Plaintiffs and the Collective Members over the course of their orientation and training program would violate the FLSA, and C.R. England was aware of the FLSA's minimum wage requirements.

71. In fact, C.R. England was sued for substantially similar FLSA violations which resulted in C.R. England settling the claims of similarly situated Driver Trainees for $5,000,000. *See Campbell v. C.R. England, Inc.*, Case No. 2:13-cv-00262, 2015 U.S. Dist. LEXIS 134235 (D. Utah, Sept. 30, 2015).

72. As such, C.R. England's conduct constitutes a willful violation of the FLSA.

73. As a result of C.R. England's failure or refusal to pay Plaintiff and the Collective Members the overtime wages as detailed herein, C.R. England violated 29 U.S.C. § 207. Plaintiff and the Collective Members are therefore entitled to compensation of overtime wage shortfall to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

## COUNT THREE: ILLINOIS MINIMUM WAGE LAW
## UNPAID MINIMUM WAGE
### (On behalf of the IMWL Class Members)

74. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

75. The IMWL mandates that every employer shall pay to each of his or her employees who is 18 years of age or older in every occupation wages of not less than $9.25 per hour, and from July 1, 2020 through December 31, 2020 every employer shall pay to each of his or her employees who is 18 years of age or older in every occupation wages of not less than $10 per hour, and from January 1, 2021 through December 31, 2021 every employer shall pay to each of his or her employees who is 18 years of age or older in every occupation wages of not less than $11 per hour, and from January 1, 2022 through December 31, 2022 every employer shall pay to each of his or her employees who is 18 years of age or older in every occupation wages of not less than $12 per hour. 820 ILCS § 105/4.

76. By failing to pay Plaintiff and the IMWL Class Members any wages whatsoever and by paying Plaintiff and the IMWL Class Members a flat daily rate of $80.00, C.R. England failed to pay Plaintiff and the IMWL Class Members the minimum wages as required by the IMWL.

77. Although at this stage, Plaintiff and the IMWL Class Members are unable to state the exact amount owed for all time worked during the course of their employment, Plaintiff and the IMWL Class Members believe that such information will become available during the course of discovery. Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

78. As a result of C.R. England's failure to pay minimum wage as required by the IMWL, Plaintiff and the IMWL Class Members are entitled to judgment in their favor in the amount of all unpaid minimum wages, to be determined at trial, treble damages, statutory interest, and Plaintiff's and the IMWL Class Members' attorney fees and costs incurred.

### COUNT FOUR: ILLINOIS MINIMUM WAGE LAW
### UNPAID OVERTIME
**(On behalf of the IMWL Class Members)**

79. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

80. The IMWL mandates that every employer shall pay employees for hours worked in excess of forty hours in any given workweek of not less than $13.88 per hour, and from July 1, 2020 through December 31, 2020 not less than $15.00 per hour, and from January 1, 2021 through December 31, 2021 not less than $16.50 per hour, and from January 1, 2022 through December 31, 2022 not less than $18.00 per hour. *See* 820 ILCS § 105/4a .

81. By requiring Plaintiff and the IMWL Class Members to work in excess of forty hours in any given workweek while failing to pay Plaintiff and the IMWL Class Members any wages whatsoever and by paying Plaintiff and the IMWL Class Members a flat daily rate of $80.00, C.R. England failed to pay Plaintiff and the IMWL Class Members the overtime wages as required by the IMWL.

82. Although at this stage, Plaintiff and the IMWL Class Members are unable to state the exact amount owed for all time worked during the course of their employment, Plaintiff and the IMWL Class Members believe that such information will become available during the course of discovery. Furthermore, when an employer fails to keep complete and accurate time records,

employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

83. As a result of C.R. England's failure to pay all overtime wages as required by the IMWL, Plaintiff and the IMWL Class Members are entitled to judgment in their favor in the amount of all unpaid minimum wages, to be determined at trial, treble damages, statutory interest, and Plaintiff's and the IMWL Class Members' attorney fees and costs incurred.

## **COUNT FIVE: ILLINOIS WAGE PAYMENT AND COLLECTION ACT**
**(On behalf of the IWPCA Class Members)**

84. Plaintiff and the IWPCA Class Members reallege and incorporate by reference all allegations in all preceding paragraphs.

85. The IWPCA prohibits deductions which are not: (1) required by law; (2) to the employee's benefit; (3) in response to a valid wage assignment or wage deduction order; or (4) made with the express written consent of the employee given freely at the time the deductions were made. *See* 820 ILCS 115/9

86. Furthermore, under the IWPCA, "[a]n employer shall reimburse an employee for all necessary expenditures or losses incurred by the employee within the employee's scope of employment and directly related to services performed for the employer." 820 ILCS 115/9.5(a).

87. The deductions that C.R. England made to Plaintiff's and the IWPCA Class Members' pay to recoup costs incurred in training C.R. England were not required by law, to the employee's benefit, in response to a valid wage assignment or wage deduction order, or made with the express written consent of Plaintiff and the IWPCA Class Members given freely at the time the deductions were made in violation of the IWPCA.

88. Moreover, by requiring Plaintiff and the Class Members to pay all or portions of the costs associated with training Plaintiff and the Class Members, C.R. England failed to

17

reimburse Plaintiff and the Class Members all necessary expenditures or losses incurred by Plaintiff and the Class Members within the scope of Plaintiff's and the Class Members' employment and directly related to services performed for C.R. England in violation of the IWPCA.

89. As a result of C.R. England's unlawful deductions and failures to reimburse as detailed herein, Plaintiff and the IWPCA Class Members are entitled to judgment in their favor in the amount of all such deductions and recoupments, to be determined at trial, statutory interest, and Plaintiff's and the IWPCA Class Members' attorney fees and costs incurred.

WHEREFORE, Plaintiff, James Sapiega, individually, and on behalf of all other similarly situated persons, requests that this Court grant the following relief in Plaintiff's, the Collective Members' and the Class Members' favor, and against Defendant, C.R. England, Inc.:

A. For the Court to declare and find that the Defendant committed one or more of the following acts:

 i. violated the minimum wage provisions of the FLSA, 29 U.S.C. § 206, by failing to pay proper minimum wages;

 ii. willfully violated the minimum wage provisions of the FLSA, 29 U.S.C. § 206;

 iii. violated the overtime provisions of the FLSA, 29 U.S.C. § 207, by failing to pay proper overtime wages; and

 iv. willfully violated the overtime provisions of the FLSA, 29 U.S.C. § 207;

 v. violated the minimum wage provision of the IMWL, 820 ILCS § 105/4;

 vi. violated the overtime provisions of the IMWL, 820 ILCS § 105/4a; and

 vii. violated the IWPCA, 820 ILCS §§ 115/9, 115/9a.

B. For the Court to award damages in the amounts of all unpaid minimum wages, overtime wages, unlawful deductions and unlawful recoupments due and owing to Plaintiff, the Collective Members and the Class Members;

C. For the Court to award compensatory damages, including liquidated damages and treble damages, in amounts to be determined at trial;

D. For the Court to award prejudgment and post-judgment interest on any damages awarded;

E. For the Court to award Plaintiff's, the Collective Members' and the Class Members' reasonable attorneys' fees and costs of the action pursuant to 29 U.S.C. § 216(b);

F. For the Court to provide a reasonable incentive award for Plaintiff to compensate him for the time he spent attempting to recover wages for the Collective Members and Class Members and for the risks he took in doing so; and

G. Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs and the Collective Members hereby demand a jury trial on all causes of action and claims with respect to which they each have a state and/or federal constitutional right to a jury trial.

DATED: October 29, 2022

Respectfully submitted,

By: /s/ *James L. Simon*
James L. Simon (*pro hac vice* forthcoming)

SIMON LAW CO.
5000 Rockside Road
Liberty Plaza – Suite 520
Independence, OH 44131
Telephone: (216) 816-8696
Email: james@simonsayspay.com


s/ *Michael L. Fradin*
Michael L. Fradin, Esq.
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Telephone: 847-986-5889
Facsimile: 847-673-1228
Email: mike@fradinlaw.com

*Counsel for Plaintiff, the putative Collective, and the Putative Class*